1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Designer Skin, LLC; et al,          )    No. CV 05-3699-PHX-JAT
                                         )
10                 Plaintiffs,           )    **ORDER**
                                         )
11  vs.                                  )
                                         )
12                                       )
     S&L Vitamins, Inc.; et al,          )
13                                       )
                   Defendants.           )
14                                       )
    _____ )

15

16          Pending before this Court is Defendants' Motion to Dismiss (Doc. #22), to which

    Plaintiffs filed a Response (Doc. #27).  Defendants failed to file a reply and the time to reply
17
    has expired.  The Motion to Dismiss is Defendants' second motion to dismiss before this
18
    Court.  Defendants' first motion to dismiss referenced the fact that similar litigation between
19
    the parties was on going in New York.  Defendants' second motion to dismiss does not
20
    reference the New York litigation and, instead, seeks dismissal based only on Federal Rule
21
    of Civil Procedure 12(b)(6).
22
            A motion to dismiss for failure to state a claim is disfavored and rarely granted.
23
    *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997).  Further, the Court must
24
    construe the facts alleged in the complaint in the light most favorable to the Plaintiff and the
25
    Court must accept all well-pleaded factual allegations as true.  *See Shwarz v. United States*,
26
    234 F.3d 428, 435 (9th Cir. 2000).  Nonetheless, Plaintiff must still meet the pleading
27
    requirements of Fed. R. Civ. Pro. 8.  Under Federal Rule of Civil Procedure 8, the complaint
28

1    must contain, "a short and plain statement of the claim showing that the pleader is entitled

2    to relief."  Thus, if the complaint fails to state a theory under which Plaintiffs may recover,

3    dismissal under 12(b)(6) is appropriate.

4          In this case, Defendants have web sites and sell merchandise on the internet.  Plaintiffs

5    make tanning lotion and other skin care products.  Defendants sell Plaintiffs' products on

6    Defendants' web sites.  Plaintiffs claim that such sale violates Plaintiffs' trademark and

7    copyright and interferes with Plaintiffs' contracts with its authorized distributors.[1]

8          Defendant moves to dismiss claiming that the complaint fails to state a claim because:

9    1) Plaintiffs' trademark and unfair competition claims fail under the first sale doctrine, 2)

10   Plaintiffs' federal trademark infringement, unfair competition, trademark dilution, state

11   trademark infringement, and common law trademark infringement claims fail because

12   Defendants' use is a nominative fair use of the marks; and 3) Plaintiffs' tortious interference

13   with contract allegations are insufficient to state a claim.  Plaintiffs respond and argue that

14   the motion to dismiss should be denied in its entirety.  Plaintiffs argue that the motion should

15   be denied in part because the nominative fair use doctrine and the first sale doctrine are

16   affirmative defenses, not grounds for dismissal under Rule 12(b)(6).  Defendants did not file

17   a reply.

18         First, the Court notes that while the motion to dismiss purports to seek dismissal of

19   all claims, it in fact does not seek dismissal of the copyright infringement claims.  Therefore,

20   even if the motion to dismiss is granted, the case will not be dismissed in its entirety.

21         Second, turning to the merits of the motion to dismiss, the Court will consider

22   Defendants' request to dismiss based on the nominative fair use doctrine.  Nominative fair

23   use is when a defendant uses a plaintiff's mark to describe the plaintiff's product because

24   there are no other words to describe the product.  *See New Kids on the Block v. New America*

25

---

26   [1]  Specifically, Plaintiffs complaint lists the following counts: common law trademark
     infringement, state statutory trademark infringement, federal trademark infringement,
27   trademark dilution, copyright infringement, interference with contractual relations, and unfair
28   competition. Doc. #1.

1  *Pub., Inc.*, 971 F.3d 302, 308 (9th Cir. 1992) (holding that a newspaper could use the name

2  "New Kids on the Block" to describe the group New Kids on the Block and to conduct a

3  survey about the group under the nominative fair use doctrine).  Plaintiffs in this case are

4  correct that nominative fair use is an affirmative defense on which Defendants will bear the

5  burden of proof.  *Id.*   To prove nominative fair use, Defendants must show:

6          1.   the product or service in question must be one not readily identifiable without use

7  of the trademark;

8          2.   only so much of the mark or marks may be used as is reasonably necessary to

9  identify the product or service; and

10         3,   the user must do nothing that would, in conjunction with the use of the mark,

11  suggest sponsorship or endorsement by the trademark holder.

12  *Id.*

13         In this case, Defendants move to dismiss as indicated above.  Motions to dismiss

14  based on Rule 12(B)(6) must be limited to the pleadings and all factual allegations of

15  Plaintiffs must be construed in the light most favorable to Plaintiffs. Fed. R. Civ. Pro. 12(b);

16  *Shwarz*, 234 F.3d 435.  In this context, the Court, generally, agrees with Plaintiffs that it

17  would be highly unusual for a Court to "dismiss" a complaint on 12(b)(6) grounds based on

18  Defendants having proven an affirmative defense.[2]

19         As to the merits, after identifying the three prongs of nominative fair use, Defendants

20  fail to apply them to this case, or argue how their use of the marks in this case is a nominative

21  fair use. Motion at 8-10.  Therefore, the motion to dismiss the trademark infringement and

22  unfair competition claims on this basis will be denied.

23         Next, Defendants argue that there can be no trademark dilution claim because

24  Defendants' use of the mark is a nominative fair use, and by definition nominative fair use

25

26  [2]  Notably, Defendants rely on *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir.

27  2002) as an example of the Court of Appeals affirming, "that the complaint...should be
dismissed" based on an affirmative defense. Motion at 9. In fact, in that case, the Court of

28  Appeals affirmed a grant of summary judgment. *Playboy*, 279 F.3d at 800.

1    does not dilute the mark.  Motion at 10.  This argument presumes the conclusion that

2    Defendants' use of the mark is in fact a nominative fair use.  Because the Court has not

3    reached this threshold conclusion, the Court will not dismiss on this basis.

4         Defendants then go on to argue that it is permissible to use a branded product's name

5    in selling the product in an aftermarket and that the trademark law does not reach the

6    aftermarket.  Motion at 11, *citing Ty Inc. v. Perryman*, 306 F.3d 509 (7th Cir. 2002), *cert.*

7    *denied*, 538 U.S. 971 (2003).   This argument does not address trademark dilution

8    specifically, but instead argues that none of trademark law can reach a second sale of a

9    product.  Basically, this is Defendants' first sale theory for dismissing Plaintiffs' claims.

10        Under the first sale doctrine, "the right of a producer to control distribution of its

11   trademarked product does not extend beyond the first sale of the product.  Resale by the first

12   purchaser of the original article under the producer's trademark is neither trademark

13   infringement nor unfair competition." *Sebastian Int'l Inc., v. Longs Drug Stores Corp.*, 53

14   F.3d 1073, 1074 (9th Cir.), *cert. denied*, 516 U.S. 914 (1995).  In this case, Defendants claim

15   that they properly purchase Plaintiffs' products in the market and then resell these products

16   on the internet, using Plaintiffs' trademarked names as the only way to describe Plaintiffs'

17   products.  Thus, Defendants claim that Plaintiffs' trademark claims and unfair competition

18   claims should be dismissed.  Plaintiffs respond and argue that Defendants have, "copied

19   works, labels, drawings, images, expressions, texts, products, descriptions, photographs,

20   marketing materials and intellectual properties belonging to [Plaintiffs...] and have deceived,

21   misled and confused customers with respect to the same."  Response at 4.

22        Courts have recognized a distinction between reselling a trademarked product, and

23   leading the public to believe the "reseller" is actually affiliated with the original

24   manufacturer.  For example, in *Sebastian*, the Ninth Circuit Court of Appeals held that

25   Sebastian, who wanted its products sold only in salons, could not prevent Longs Drug Stores

26   from selling the products when Longs only stocked and resold the genuine trademarked

27   products.  Similarly, in *Matrix Essentials v. Emporium Drug Mart*, 988 F.2d 587 (5th Cir.

28   1993), the Court held that even though Matrix wanted its trademarked products to be sold

1  only in professional salons, "[a]bsent more culpable conduct on the part of the seller, we are

2  unwilling to find misrepresentation in the mere act of putting a manufacturer's product on

3  one's shelf and offering it for sale." *Id.* at 593.

4        Conversely, courts have found Lanham Act violations when the reseller used the

5  trademark in such a way that it would likely cause the public to be confused into believing

6  that the reseller was part of the producer's authorized sales force or a franchisee of the

7  producer. *See Sebastian*, 53 F.3d at 1076 (*citing Bandag, Inc. v. Al Bolser's Tire Store*, 750

8  F.2d 903 (Fed. Cir. 1984); *Stormor, a Div. of Fuqua Indus. v. Johnson*, 587 F.Supp. 275

9  (W.D. Mich. 1984)).  Specifically,

10      In *Bandag*, the reseller used the producer's trademark in a telephone directory
   advertisement in such a way as to suggest the reseller was one of the

11      producer's franchisees, 750 F.2d at 911, 916; in *Stormor* the reseller displayed
   the producer's trademark in the reseller's booth at a trade show and in a trade

12      journal advertisement, and stamped the reseller's name on the producer's
   promotional literature and used it to advertise the resale of the producer's

13      products by the reseller, 587 F.Supp. at 279.

14  *Sebastian*, 53 F.3d at 1076.

15        As discussed above, in the context of a motion to dismiss for failure to state a claim,

16  the Court must construe all factual allegations in favor of Plaintiffs; and, the Court cannot

17  grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts

18  in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813,

19  816 (9th Cir. 1994).  The Court notes that the complaint and the response to the motion do

20  not allege many "facts" to support Plaintiffs' claim that Defendants are causing confusion

21  with Plaintiffs' trademark.[3]  However, Plaintiffs do claim that Defendants:

22         •    use Plaintiffs' trademark on Defendants' web sites,

23

24

25

26  [3] For example, Plaintiffs' statement that "Defendants own and operate one or more internet
   web site(s) that engage in the unlawful infringement of Designer Skin's intellectual property

27  rights, that unfairly compete in the marketplace with Designer Skin, and that intentionally
   and tortiously interfere with Designer Skin's agreements with one or more of its distributors"

28  is a legal conclusion, not a factual allegation.  Motion at 3, paragraph 2.

- 5 -

1      •    copied Plaintiffs' works, labels, drawings, images, expressions, texts, products,

2            descriptions, photographs, and marketing materials, and

3      •    use Plaintiffs' trademark as metatags to cause internet searches to go to

4            Defendants' web sites rather than authorized distributor's web sites.

5 Plaintiffs then go on to conclude that these uses cause consumers to be mislead about the

6 source and the origin of the products.

7       This case presents a close question regarding whether internet resale of the type

8 described is more similar to simply reselling a product like *Sebastian* or whether there was

9 so much use of the trademark and related materials that a consumer would believe he or she

10 was dealing with either the manufacturer directly or a franchisee like *Bandag*.  However,

11 construing the facts in the light most favorable to Plaintiffs, the Court cannot say Plaintiffs

12 can prove no set of facts that would entitle them to relief.  Therefore, Defendants' motion to

13 dismiss based on the first sale doctrine will be denied.

14       Finally, Defendants seek dismissal of Plaintiffs' tortious interference with contractual

15 relations claim on the theory that the Complaint fails to allege sufficient facts to state a claim

16 on this basis.  Plaintiffs oppose the motion.

17       The parties agree to at least four elements of a tortious interference claim:

18      1.    The existence of a valid contractual relationship (or business expectancy);

19      2.    The interfere's knowledge of the relationship (or expectancy);

20      3.    The interferer's intentional interference inducing or causing breach (or

21 termination of the relationship or expectancy); and

22      4.    Resultant damage to the party whose relationship or expectancy has been

23 disrupted.

24 Motion at 13 (*citing Miller v. Hehlen*, 104 P.3d 193, 202 (2005)); Response at 12 (*citing*

25 *Safeway Insurance Co., Inc. v. Guerrero*, 83 P.3d 560 [¶ 14] (Ariz. App. 2004) *opinion*

26 *vacated by Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 ¶ 14 (Ariz. 2005) (recognizing

27 the same five elements for the tort of intentional interference with contractual relations)).

28 Plaintiffs suggest an additional element:

1          5.    The interferer's improper actions.

2   Response at 12 (citing *Safeway Insurance Co., Inc. v. Guerrero*, 83 P.3d 560 (Ariz. App.

3   2004) *opinion vacated by Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1025 ¶ 14 (Ariz.

4   2005) (recognizing the same five elements for the tort of intentional interference with

5   contractual relations)).  Notably, although not acknowledged by Defendants, the case cited

6   by Defendants also contains this element. *Miller*, 104 P.3d at 202 ¶ 32 ("The interference

7   must be 'improper' before liability will attach.")

8          Having basically agreed to the legal framework, Plaintiffs then argue that they have

9   contracts with their distributors that restrict the distributors ability to sell to internet retailers,

10  that Defendants in this case are aware of these restrictions, that Defendants have

11  misrepresented themselves to obtain Plaintiffs' products from these distributors contrary to

12  the contracts, and that Plaintiffs suffered damages.  In their Motion, Defendants argue that

13  Plaintiffs do not make allegations that would show entitlement to relief under each prong of

14  a tortious interference claim.[4]  However, in their Response, Plaintiffs make an allegation with

15  respect to each prong of the tort of intentional interference with contractual relations.  And,

16  Defendants declined to file a reply.  Thus, construing the facts in the light most favorable to

17  Plaintiffs, at this stage of the case, the Court cannot conclude that Plaintiffs can prove no set

18  of facts that would entitle them to relief.  Therefore, the motion to dismiss this claim will also

19  be denied.

20         Defendants further seek dismissal of Plaintiffs' request for injunctive relief.  The

21  request for injunctive relief is not a cause of action.  Therefore, it cannot independently "state

22  a claim" nor be dismissed under Rule 12(b)(6) for failure to state a claim.  Accordingly, the

23  Court will not dismiss this theory of relief.  To the extent Plaintiffs seek a permanent

24  injunction, that request will be addressed following trial (assuming a Plaintiffs' victory

25  following trial).  If Plaintiffs seek a preliminary injunction to be in force during the duration

26

27  [4]  For example, Defendants argue, "...nothing in plaintiffs' complaint demonstrates that
    plaintiffs have a basis for claiming that [Defendants] had done business with any distributors;
28  or that [Defendants] knew of plaintiffs' specific contracts... ."  Motion at 14.

1   of this case, Plaintiffs may file a motion for preliminary injunction consistent with Federal

2   Rule of Civil Procedure 65.

3          Based on the foregoing,

4          **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. #22) is denied in its

5   entirety.

6          **IT IS FURTHER ORDERED** that Defendants shall answer within 10 days of this

7   Order.

8          **IT IS FURTHER ORDERED** that the order setting rule 16 scheduling conference

9   will follow.

10         DATED this 19th day of March, 2007.

11

12

13   _____
                        James A. Teilborg
                   United States District Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28