**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Designer Skin, LLC, et al., | No. CV 05-3699-PHX-JAT |
| Plaintiffs, | **ORDER** |
| vs. | |
| S & L Vitamins, Inc., et al., | |
| Defendants. | |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. # 51) and Plaintiffs' Motion for Partial Summary Judgment (Doc. # 52). The Court now rules on these motions.

**I.     Background**

Designer Skin, LLC is a manufacturer of certain indoor tanning products. It owns a number of registered trademarks in these products and its company name, and also owns the copyright in certain artwork related to its products.

Designer Skin distributes its products through independent distributors. The relationship between Designer Skin and its distributors is governed by the terms of a distributorship agreement, which limits the distributors' ability to resell Designer Skin's products. Specifically, the agreement prohibits the distributors from selling Designer Skin's products to anyone other than certain qualifying tanning salons. More specifically, the

agreement prohibits the distributors from selling Designer Skin's products to internet resellers.

S & L Vitamins, Inc. is an internet reseller: it buys various products in bulk and then resells those products on its websites at discount prices. Since some time near the beginning of 2004, S & L Vitamins has sold Designer Skin products on its websites. S & L Vitamins has obtained all of its Designer Skin products through tanning salons. It has not purchased any of these products directly from a Designer Skin distributor.

On its websites, S & L Vitamins displays thumbnail images of the Designer Skin products for sale and identifies those products by using Designer Skin's trademarks. In addition, S & L Vitamins uses Designer Skin's trademarks in the metatags of its sites and as search-engine keywords. On the current websites at issue, S & L Vitamins has posted a disclaimer stating that it is not affiliated with or authorized by any tanning lotion manufacturers to sell their products. It is unclear, however, when S & L Vitamins first posted this disclaimer on its sites.

Designer Skin filed this action on November 14, 2005, claiming trademark infringement,[1] trademark dilution, copyright infringement, intentional interference with contractual relations, and unfair competition. S & L Vitamins filed counterclaims for unfair competition and for declaratory judgments of noninfringement of trademark and noninterference with contract. Designer Skin now moves for partial summary judgment on its claims of trademark infringement, copyright infringement, and intentional interference with contractual relations, and on all counterclaims. S & L Vitamins cross-moves for summary judgment on all claims and counterclaims in this case except its counterclaim for unfair competition.

---

[1] Designer Skin actually asserts three separate trademark-infringement claims: (1) common-law trademark infringement; (2) state statutory trademark infringement under Arizona law; and (3) federal trademark infringement under the Lanham Act. The parties, however, agree that there is no relevant difference between these claims for the purposes of their cross-motions for summary judgment. The Court will therefore treat these claims as one for purposes of this Order.

- 2 -

## II. Legal Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmovant to establish the existence of a material fact. *Id.* The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the nonmoving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## III. Discussion

*A. First-to-File Rule*

As a preliminary matter, the Court briefly addresses the first-to-file rule. The first-to-file rule "is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir.1982). S & L Vitamins has made reference to this doctrine, and the

1  parallel litigation proceeding in the Eastern District of New York, at various points
2  throughout this litigation. But S & L Vitamins has not moved to dismiss this case pursuant
3  to the first-to-file rule. For this reason, not to mention the fact that this case is now at the
4  summary-judgment stage of litigation and has already been set for trial, this Court will not
5  consider the merits of dismissing or transferring this case under the first-to-file rule.

*B. Trademark Infringement*

Both parties move for summary judgment on the trademark-infringement claim (and the corresponding counterclaim for a declaratory judgment of noninfringement). The facts pertaining to this claim are undisputed: (1) S & L Vitamins uses Designer Skin's trademarks in the metatags and source codes[2] of its websites, and as search-engine keywords,[3] to inform internet consumers who are searching for Designer Skin's products that those products are for sale on S & L Vitamins' websites;[4] (2) On its websites, S & L Vitamins sells genuine Designer Skin products, as well as products of Designer Skin's competitors; and (3) S & L

---

[2] "Metatags are hidden code used by some search engines to determine the content of websites in order to direct searchers to relevant sites." *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 n.2 (9th Cir. 2002). Because neither party has distinguished between metatags and source codes, the Court assumes that there is no practical distinction between the two.

[3] According to Designer Skin, the benefit of owning keyword "rights" in a search engine is that when a keyword is typed into a search engine, the keyword owner's website will appear near the top of the results page. Doc. # 63 at 11-12.

[4] S & L Vitamins also visibly uses the marks on its websites to refer to the Designer Skin products for sale. Designer Skin, however, conceded that these visible uses do not infringe its trademarks at oral argument before this Court on May 5, 2008. In response to a direct question on the issue, Designer Skin's counsel responded that the only allegedly actionable uses in this case are "the uses that are contained in the source codes and the key words and the metatags." Doc. # 74 at 23. Counsel stated further:
> I mean, the fact that they have a website where you can go to it and it says Designer Skin Boutique . . . there's nothing that's protected about that, and, in fact, if that's all that they did in their website was sell these products by having the name of the product on the website and the price, again, we wouldn't be here today. We wouldn't be here on a trademark claim. It's not the use of the name on the site that creates that.

*Id.*

- 4 -

1  Vitamins uses Designer Skin's trademarks without permission. The parties disagree as to the
2  legal significance of these facts.

3  The parties' disagreement centers around "[t]he core element of trademark
4  infringement": the likelihood of consumer confusion. *Interstellar Starship Servs., Ltd. v.*
5  *Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002). S & L Vitamins argues that there is no
6  likelihood of confusion under the facts of this case. S & L Vitamins emphasizes that it uses
7  the marks to truthfully identify the mark holder's product, i.e., the source of the goods, and
8  maintains that it has done nothing to suggest that it is affiliated with or sponsored by
9  Designer Skin in any way. In response, Designer Skin argues that S & L Vitamins causes
10 what the Ninth Circuit calls "initial interest" confusion. *See, e.g.*, *Brookfield Commc'ns, Inc.*
11 *v. West Coast Entm't Group*, 174 F.3d 1036, 1062 (9th Cir. 1999). This argument appears
12 to take three forms. First, Designer Skin seems to suggest that initial interest confusion
13 results from the mere fact that S & L Vitamins uses the marks in the metatags of its sites and
14 as search-engine keywords. Second, Designer Skin argues that initial interest confusion
15 results from the fact that these invisible uses sometimes give S & L Vitamins' websites
16 higher priority on search-results pages than Designer Skin's website. And third, Designer
17 Skin argues that the visible uses of its marks on the websites in close association with S &
18 L Vitamins' own logo somehow bolsters the alleged initial interest confusion. Each of
19 Designer Skin's arguments fails as a matter of law.

20 Designer Skin's first argument misstates the law. Initial interest confusion has been
21 equated to a "bait and switch" scheme. *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376,
22 382 (7th Cir. 1996). It occurs when potential customers are lured away from a trademark
23 holder's product to a competitor's product through the deceptive use of the holder's mark.
24 *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1025 (9th Cir. 2004);
25 *Brookfield*, 174 F.3d at 1062; Deborah F. Buckman, Annotation, *Initial Interest Confusion*
26 *Doctrine Under Lanham Trademark Act*, 183 A.L.R. Fed. 553, 572-73 (2003). Deception,
27 it bears emphasizing, is essential to a finding of initial interest confusion. The Ninth
28 Circuit's oft-quoted example of initial interest confusion clearly illustrates this point:

> Suppose West Coast's competitor (let's call it "Blockbuster") puts up a billboard on a highway reading – "West Coast Video: 2 miles ahead at Exit 7" – where West Coast is really located at Exit 8 but Blockbuster is located at Exit 7. Customers looking for West Coast's store will pull off at Exit 7 and drive around looking for it. Unable to locate West Coast, but seeing the Blockbuster store right by the highway entrance, they may simply rent there. Even consumers who prefer West Coast may find it not worth the trouble to continue searching for West Coast since there is a Blockbuster right there. Customers are not confused in the narrow sense: they are fully aware that they are purchasing from Blockbuster and they have no reason to believe that Blockbuster is related to, or in any way sponsored by, West Coast. Nevertheless, the fact that there is only initial customer confusion does not alter the fact that Blockbuster would be misappropriating West Coast's acquired good will.

*Brookfield*, 174 F.3d at 1064.[5] Thus, the mere fact that S & L Vitamins uses Designer Skin's marks in the metatags of its sites and as search-engine keywords does not result in initial interest confusion. Designer Skin must show that these uses are deceptive.

Designer Skin's second argument recognizes that deception is a necessary element of initial interest confusion. But it likewise fails as a matter of law. Liability only attaches for trademark infringement when conduct is "likely to confuse an *appreciable* number of people as to the source of the product." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). Designer Skin contends that internet users who type "Designer Skin" into a search engine will falsely believe that S & L Vitamins is affiliated with Designer Skin because of the mere fact that the links to S & L Vitamins' websites will sometimes appear near the top (or even at the top) of the results page. To begin with, Designer Skin has offered no evidence that S & L Vitamins' websites appear near the top of results pages. And secondly, assuming such evidence does exist, the Court concludes that such users, if any, will be the naive few. S & L Vitamins' domain names — "www.thesupplenet.com" and

---

[5] The facts in *Brookfield* reinforce this point about the deceptive aspect of initial interest confusion. In *Brookfield*, a competitor was using the trademarks at issue in the metatags of a website that did not contain the mark holder's products. As a result, the competitor was deceiving customers who were looking for the mark holder's products into believing those products were available on its website, and thereby diverting the mark holder's customers to its site. Because the trademarks were used to bait consumers in this way, the Ninth Circuit held that this conduct caused initial interest confusion. *Id.* at 1062.

- 6 -

"www.bodysourceonline.com" — bear no resemblance whatsoever to "Designer Skin" or its domain name — "www.designerskin.com."[6]

Finally, Designer Skin's third argument — that the visible uses of its marks on the websites in close association with S & L Vitamins' own logo somehow bolsters the alleged initial interest confusion — fails as a matter of law because it is irrelevant to a finding of initial interest confusion. An internet searcher cannot possibly be deceived into initially visiting a website by the look of the website itself: the website is not viewed until the searcher arrives. Thus, the only way to make sense of Designer Skin's "logo association" argument is to presume that Designer Skin is claiming that the look of the website will confuse consumers into thinking they are purchasing Designer Skin products from someone affiliated with or sponsored by Designer Skin, i.e., that there is confusion at the point of sale. But this presumption is foreclosed by Designer Skin's own admission that the visible uses of its trademarks on the websites are not actionable. *See supra* note 4. As Designer Skin has conceded, initial interest confusion (a form of presale confusion) is the only alleged form of confusion in this case. *Id.*; *see also* Doc. # 63 at 4 ("[T]he legal issue is that S & L uses Designer Skin's trademarks to deliberately cause initial interest confusion.").

In contrast to the deceptive conduct that forms the basis of a finding of initial interest confusion, S & L Vitamins uses Designer Skin's marks to truthfully inform internet searchers where they can find Designer Skin's products. Rather than deceive customers into visiting their websites, this use truthfully informs customers of the contents of those sites. Indeed, in practical effect S & L Vitamins invites Designer Skin's customers to purchase Designer Skin's products. The fact that these customers will have the opportunity to purchase competing products when they arrive at S & L Vitamins' sites is irrelevant. The customers searching for Designer Skin's products find exactly what they are looking for when they

---

[6] Furthermore, Designer Skin has offered no evidence in the form of expert testimony or lay testimony that anyone hypothetically could be or actually was confused in this way.

- 7 -

1 arrive at these sites. S & L Vitamins is not deceiving consumers in any way. Thus, its use
2 of the marks does not cause initial interest confusion.[7]

3 The Court recognizes that this holding is at odds with the Tenth Circuit's decision in
4 *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006). There, under facts
5 virtually identical to those in this case, the Tenth Circuit held that the defendant's use of the
6 trademarks caused initial interest confusion because it "used the goodwill associated with
7 Plaintiffs' trademarks in such a way that consumers might be lured to the lotions from
8 Plaintiffs' competitors." *Id.* at 1239. With all due respect to the Tenth Circuit, this Court
9 does not find *Hatfield* persuasive. In this Court's view, there is a meaningful distinction
10 between (1) using a mark to attract potential customers to a website that only offers products
11 of the mark holder's competitors and (2) using a mark to attract potential customers to a
12 website that offers the mark holder's genuine products as well as the products of competitors.
13 As discussed above, in the latter situation no "bait and switch" occurs.

14 In sum, S & L Vitamins' use of Designer Skin's trademarks to accurately describe the
15 contents of its websites does not cause initial interest confusion. As a result, the Court will

---

[7] If it were otherwise, if this guileless, informative use of trademarks in metatags and as search-engine keywords constitutes initial interest confusion, then trademark law would be (to the extent it is not already) in the unenviable position of stymying access to the world of goods and services lawfully available on the internet. Unless it is accurately "mapped," the internet is just a vast expanse of uncharted (virtual) territory. *See generally* Thomas C. Folsom, *Missing the Mark in Cyberspace: Misapplying Trademark Law to Invisible and Attenuated Uses*, 33 Rutgers Computer & Tech. L.J. 137 (2007). As one commentator has observed:

> If a hitchhiker in cyberspace is the prototypical surfer on the Internet, then a hitchhiker's guide would be something highly to be desired, and perhaps even encouraged as a public good and certainly in the public interest. It would seem rather remarkable that in the readily available Internet directories and search engines, something very like the hitchhiker's guide already exists, and it would seem more remarkable still, and a pity, if the law, in its over-exuberant giddiness as it thrashes about with mark-type conflicts in cyberspace, should kill such a resource.

*Id.* at 143 n.15 (citation omitted); *see also Welles*, 279 F.3d at 803-04 (discussing the difficulties that internet searchers would face if trademarks could not be used to truthfully identify the contents of websites).

1 grant S & L Vitamins' motion for summary judgment on all of Designer Skin's trademark
2 claims and on S & L Vitamins' corresponding counterclaim for declaratory judgment of
3 noninfringement.

*C. Trademark Dilution*

S & L Vitamins moves for summary judgment on this claim, arguing that, even assuming Designer Skin's trademarks are famous, its use of Designer Skin's marks is protected by the nominative fair use defense. In response, Designer Skin argues that the nominative fair use defense does not apply because the manner in which S & L Vitamins uses the marks suggests that Designer Skin endorses its use. There is no merit to Designer Skin's argument.

To establish trademark dilution under the Federal Trademark Dilution Act, a trademark holder must prove four elements: (1) its trademark is famous; (2) the defendant is making commercial use of its mark in commerce; (3) the mark became famous before the defendant began using the mark; and (4) the defendant's use is causing actual harm to the trademark holder. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1010 (9th Cir. 2004). In contrast to infringement, "[d]ilution works its harm not by causing confusion in consumers' minds regarding the source of a good or service, but by creating an association in consumers' minds between a mark and a different good or service." *Welles*, 279 F.3d at 805. The Ninth Circuit has held that "[n]ominative uses, by definition, do not dilute the trademarks." *Id.* A use is nominative if it meets three elements:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids on the Block v. New America Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992) (footnote omitted).

The first two elements are easily met in this case. First, there is no descriptive substitute for Designer Skin's trademarks. In discussing this element, the *New Kids* court gave the example of the trademarked term, "Chicago Bulls." While "one might refer to the

- 9 -

1 'two-time world champions' or 'the professional basketball team from Chicago,' . . . it's far
2 simpler (and more likely to be understood) to refer to the Chicago Bulls." *Id.* at 306.
3 Likewise, the only reasonable way S & L Vitamins can inform internet consumers that
4 Designer Skin products are for sale on its websites is to use the Designer Skin name and the
5 names of its products. Just as the generally descriptive term "professional basketball team"
6 was an inadequate descriptive substitute for "Chicago Bulls," so the term "tanning lotions"
7 is an inadequate substitute for "Designer Skin" or any of its product names. Holding
8 otherwise "would have the unwanted effect of hindering the free flow of information on the
9 internet, something which is certainly not a goal of trademark law." *Welles*, 279 F.3d at 804.
10 Second, S & L Vitamins uses no more of the trademarks than the words contained in them.
11 It thus uses no more of the marks than is necessary to identify the contents of its website. *See*
12 *id.* at 802.

13    The third element is also met in this case. It is undisputed that S & L Vitamins visibly
14 uses the marks on its websites to accurately identify Designer Skin's products. It is also
15 undisputed that S & L Vitamins invisibly uses the marks in metatags and as keywords to
16 accurately identify the contents of its websites. Designer Skin, however, contends that the
17 invisible uses of its marks cause S & L Vitamins' websites to appear near the top (and
18 sometimes even at the top) of results pages when internet consumers search for the
19 trademarked terms. This higher priority, according to Designer Skin, suggests sponsorship
20 or endorsement of the use. There is support for Designer Skin's argument in the Ninth
21 Circuit's caselaw. See *id.* at 804 (stating that the nominative fair use defense might be
22 unavailable where the use of marks in metatags causes the user's site to "regularly appear
23 above [the mark holder's] in searches for one of the trademarked terms"). The problem here,
24 however, is that Designer Skin's contention of higher priority has no evidentiary basis. It is
25 based on nothing but a lawyer's say-so, and unsupported arguments are insufficient to defeat
26 a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. Thus, on the record before
27 this Court, S & L Vitamins has done "nothing that would, in conjunction with the mark,
28 suggest sponsorship or endorsement by the trademark holder." *New Kids*, 971 F.2d at 308.

Therefore, S & L Vitamins' use of Designer Skin's trademarks in its metatags and as search-engine keywords is protected by the nominative fair use doctrine.[8]

Moreover, although S & L Vitamins did not move for summary judgment on this ground, the Court is unable to discern how S & L Vitamins' use of Designer Skin's marks has caused any actual harm to Designer Skin. "Dilution works its harm . . . by creating an association in consumer's minds between a mark *and a different good or service*." *Welles*, 279 F.3d at 805 (emphasis added). The *Welles* court provided the following example of such harm:

> [I]f a cocoa maker began using the "Rolls Royce" mark to identify its hot chocolate, no consumer confusion would be likely to result. Few would assume that the car company had expanded into the cocoa making business. However, the cocoa maker would be capitalizing on the investment the car company had made in its mark. Consumers readily associate the mark with highly priced automobiles of a certain quality. By identifying the cocoa with the Rolls Royce mark, the producer would be capitalizing on consumers' association of the mark with high quality items.

*Id.* The facts of this case do not fit this paradigm. Here, Designer Skin does not even allege that an improper association exists between its marks and some new product. (Instead, it alleges that an improper association exists between S & L Vitamins and Designer Skin.) S & L Vitamins undisputedly uses Designer Skin's marks to refer to Designer Skin's products. Thus, the harm the anti-dilution statute seeks to prevent is absent from this case.

Accordingly, the Court will grant summary judgment on the trademark-dilution claim to S & L Vitamins.

*D. Copyright Infringement*

Designer Skin's allegations of copyright infringement involve two distinct categories of works: (1) electronic renderings of its products that appear on its website; and (2) written descriptions of its products that appear on its website and in its marketing materials. But Designer Skin has produced copyright registrations only for the "dimensional artwork" related to its products. See Doc. # 52 at Ex. 1(A). This description cannot possibly refer to

---

[8] This finding also represents an alternative basis for granting summary judgment to S & L Vitamins on the trademark-infringement claims.

- 11 -

1  the second category of works, which consists of purely textual material. Therefore, because
2  registration of a copyright claim is a jurisdictional prerequisite to an action for infringement,
3  17 U.S.C. § 411(a), the only infringement claim properly before this Court involves the
4  electronic renderings.

5  To establish a prima-facie case of copyright infringement, the plaintiff must show that
6  he owns the copyright and that the defendant copied it. *Hustler Magazine, Inc. v. Moral*
7  *Majority, Inc.*, 796 F.2d 1148, 1151 (9th Cir. 1986). Because there is rarely any direct
8  evidence of copying, copying may be established by circumstantial evidence of (1) the
9  defendant's access to the copyrighted work and (2) the substantial similarity between the
10 copyrighted work and the defendant's work. *Data East USA, Inc. v. Epyx, Inc.*, 862 F.2d
11 204, 206 (9th Cir. 1988). It is undisputed that Designer Skin owns the copyrights to the
12 images that appear on its website.

13 Both parties move for summary judgment on this claim. Designer Skin maintains that
14 S & L Vitamins has copied the electronic renderings that appear on Designer Skin's website
15 and is displaying these copied images on S & L Vitamins' own websites. S & L Vitamins
16 denies these allegations and maintains that all the images of Designer Skin products
17 appearing on its sites are original photographs of the products themselves.[9] The Court finds
18 that whether the images appearing on S & L Vitamins' sites are copies of Designer Skin's
19 electronic renderings or photographs of the products themselves presents a genuine issue of
20 material fact for the jury to decide.

21 This is not the end of the inquiry, however, as S & L Vitamins argues that even
22 assuming it copied Designer Skin's electronic renderings, its use of these images to identify
23 Designer Skin's products is protected by the fair use doctrine. "Fair use is an 'equitable rule
24 of reason,'" *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th
25 Cir. 1997) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 448

---

[9] At oral argument before this Court on May 5, 2008, Designer Skin conceded that taking photographs of its products would not infringe any copyright it owns in its product labels.

- 12 -

1  (1984)), that "permits courts to avoid rigid application of the copyright statute when, on
2  occasion, it would stifle the very creativity which that law is designed to foster." *Id.* (internal
3  quotations marks omitted). Courts must consider and weigh four factors in determining
4  whether the fair use doctrine applies in a particular case:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. The Court now considers these factors.

### 1. Purpose and Character of Use

This factor involves a two-part inquiry. First, is the copyrighted work being used for a commercial purpose? "[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp.*, 464 U.S. at 451. The "crux" of the distinction between commercial and noncommercial uses "is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 562 (1985). Second, is the new work transformative? "[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).

Regarding the first part of the inquiry, the court finds that while S & L Vitamins' use of the renderings has a commercial purpose, the commercial character of the use is "more incidental and less exploitive in nature than more traditional types of commercial use." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003). S & L Vitamins does not sell copies of the electronic renderings — it sells Designer Skin products. The renderings are used primarily to identify and market these products, to give internet consumers a representative picture of what they are buying. Thus, S & L Vitamins profits from the use of these images only indirectly.

Regarding the second part of the inquiry, however, the Court finds that S & L Vitamins' use is minimally transformative at best. Citing to *Kelly*, S & L Vitamins argues that its use of smaller, lower-resolution images is transformative. In *Kelly*, however, the Ninth Circuit's finding of transformative use was primarily based on the additional fact that the defendant's use "served an entirely different function than [the] original images." *Id.* at 818. That is not the case here. Both parties use the images for the same reason: to market Designer Skin products to consumers.

Considering both aspects of this factor, the Court finds that the purpose and character of S & L Vitamins' use weighs slightly against fair use.

### 2. Nature of the Work

The second factor focuses on the distinction between creative and factual works, and published and unpublished works. "Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works." *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001). The electronic renderings at issue in this case were created by Designer Skin's graphic designer. The work product of a graphic designer, like any other artist, is fundamentally creative in nature. With that said, the renderings were not created for any aesthetic or educational purpose but for the functional purpose of selling products. Thus, although creative, the renderings do not seem to be at the core of intended copyright protection. *Compare Campbell*, 510 U.S. at 586; *S & L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188, 214 (E.D.N.Y. 2007). Moreover, the fair use doctrine is more likely to apply to published works, *Kelly*, 336 F.3d at 820, and Designer Skin concededly published its renderings on the internet before S & L Vitamins allegedly copied them. Nevertheless, because of the clearly creative nature of the work, this factor weighs slightly against fair use.

### 3. Amount and Substantiality of the Portion Used in Relation to the Whole

"The third factor asks whether 'the amount and substantiality of the portion used in relation to the copyrighted work as a whole' . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (quoting 17 U.S.C. § 107). "While 'wholesale

1  copying does not preclude fair use per se,' copying an entire work 'militates against a finding
2  of fair use.'" *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110,
3  1118 (9th Cir. 2000) (quoting *Hustler*, 796 F.2d at 1155).  Furthermore, the Ninth Circuit
4  "has held that a finding that the alleged infringers copied the material to use it for the same
5  intrinsic purpose for which the copyright owner intended it to be used is strong indicia of no
6  fair use." *See id.*  S & L Vitamins copied the entire work and uses it for the same purpose
7  for which Designer Skin intended it to be used: to identify and market Designer Skin
8  products to consumers.  Under these circumstances, the third factor weighs against fair use.

### 4.  Effect of the Use Upon the Potential Market for the Copyrighted Work

10  The fourth factor, and the most important factor, *Sony Computer Entm't Am., Inc. v.*
11  *Bleem, LLC*, 214 F.3d 1022, 1029 (9th Cir. 2000), is "the effect of the use upon the potential
12  market for or value of the copyrighted work." 17 U.S.C. § 107(4).  Under this factor, the
13  court considers "not only the extent of market harm caused by the particular actions of the
14  alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged
15  in by the defendant . . . would result in a substantially adverse impact on the potential
16  market.'" *Campbell*, 510 U.S. at 590 (quoting 3 Nimmer & Nimmer, *Nimmer on Copyright*
17  § 13.05[A][4], at 13-102.61 (1993)).

18  Designer Skin argues that the relevant market is the authorized market for Designer
19  Skin's tanning products.  The Court disagrees.  The relevant market is the market for "the
20  copyrighted work," 17 U.S.C. § 107(4), which in this case is the electronic images
21  themselves.  Designer Skin seems to concede that there is no market for these images.
22  Designer Skin sells tanning products, not images of its products.  Thus, S & L Vitamins' use
23  of the images has not caused any market harm, and nor could it, regardless of how
24  widespread its use might be.  This final factor thus clearly weighs in favor of fair use.

25  Nonetheless, with three factors weighing against fair use (although two only slightly)
26  and only one weighing in favor of it (albeit the most important one), the Court finds that
27  copying the electronic renderings from Designer Skin's website and pasting them on S & L
28  Vitamins' own sites for the purpose of selling Designer Skin's products is not protected by

1  the fair use doctrine. As a result, the copyright-infringement claim will proceed to trial on
2  the issue of whether the images on S & L Vitamins' websites are either copies of Designer
3  Skin's electronic renderings or photographs of the products themselves.

   *E. Intentional Interference with Contractual Relations*

5  Designer Skin claims that some of its distributors have breached their distributorship
6  agreement with Designer Skin by selling Designer Skin products to S & L Vitamins, an
7  internet reseller, and that S & L Vitamins caused this breach.

8  In Arizona, to recover for the tort of intentional interference with contractual relations,
9  a plaintiff must prove five elements: "(1) existence of a valid contractual relationship, (2)
10 knowledge of the relationship on the part of the interferor, (3) intentional interference
11 inducing or causing a breach, (4) resultant damage to the party whose relationship has been
12 disrupted, and (5) that the defendant acted improperly."[10] *Wells Fargo Bank v. Arizona*
13 *Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12,
14 31 (Ariz. 2002).

15 S & L Vitamins argues that Designer Skin has failed to present any evidence that S
16 & L Vitamins has induced or caused a breach of the distributorship agreement. Specifically,
17 S & L Vitamins argues that it could not have caused a breach of this agreement because it
18 has never purchased Designer Skin products directly from a distributor.

19 Designer Skin responds in two ways. First, Designer Skin disputes S & L Vitamins'
20 claim that it has never purchased Designer Skin products directly from distributors. And
21 second, even assuming that S & L Vitamins has never purchased the products directly from
22 distributors, Designer Skin maintains that the tanning salons that sell Designer Skin products
23 to S & L Vitamins are acting as agents of S & L Vitamins when they purchase those products
24 from the distributors. The Court finds insufficient evidence to support either of Designer
25 Skin's theories.

---

[10] The parties agree that Arizona law applies.

### 1. Direct-Purchase Theory

The only evidence Designer Skin has presented in support of its direct-purchase theory are the undisputed facts that S & L Vitamins sells Designer Skin products (1) in volume, (2) at a profit, and (3) for a discount. Based on these three (facially innocuous) facts, Designer Skin maintains that a reasonable jury could infer that S & L Vitamins has purchased Designer Skin products directly from distributors. The Court disagrees. Inferring wrongdoing from the mere fact that a company is running a successful business is not reasonable — it is entirely unreasonable.

### 2. Agency Theory

In Arizona, "[a]n agency relationship can derive from either actual or apparent authority." *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 161 P.3d 1253, 1261 (Ariz. Ct. App. 2007) (citing Restatement (Third) of Agency §§ 2.01, 2.03 (2006)). "Actual authority is an agent's power to affect the principal's legal relations in accord with the agent's reasonable understanding, at the time the agent acts, of the principal's manifestations to the agent." Restatement (Third) of Agency § 2.02 cmt. c. Apparent authority, in contrast, "exists when 'the principal has intentionally or inadvertently induced third persons to believe that . . . a person was its agent although no actual or express authority was conferred on him as agent.'" *Ruesga*, 161 P.3d at 1261 (quoting *Premium Cigars Int'l, Ltd. v. Farmer-Butler-Leavitt Ins. Agency*, 96 P.3d 555, 565 (Ariz. Ct. App. 2004)). The burden of proving the existence of an agency relationship is on the party asserting it. *Brown v. Arizona Dep't of Real Estate*, 890 P.2d 615, 621 (Ariz. Ct. App. 1995).

Because Designer Skin concedes that its distributors did not believe they were selling products to S & L Vitamins' agents, the only possible basis for finding that an agency relationship existed between a tanning salon and S & L Vitamins is actual authority. And although actual authority "may be, and frequently is, implied from the words and conduct of the parties and the circumstances of the particular case," *Canyon State Canners, Inc. v. Hooks*, 243 P.2d 1023, 1024 (Ariz. 1952), such "implied" actual authority must be based on facts that would "naturally lead another to believe" an agency relationship exists:

> An implied agency must be based on facts for which the principal is responsible; they must, in the absence of estoppel, be such as to imply an intention to create the agency, and the implication must arise from a natural and reasonable, and not from a forced, strained, or distorted, construction of them. They must lead to the reasonable conclusion that mutual assent exists, and be such as naturally lead another to believe in and to rely on the agency.

*Id.* at 1025.

The evidence in this case is insufficient to support such a finding. The undisputed facts are as follows: S & L Vitamins orders Designer Skin products from tanning salons. The tanning salons then order the products from a Designer Skin distributor. When the products arrive, S & L Vitamins picks up the products and invoice from the tanning salon, reviews the invoice, and then returns the invoice with its payment at the previously agreed upon price, which, depending on the product, is 10-20% greater than the invoice price. The natural implication to be drawn from these facts is not that S & L Vitamins had the right to control the tanning salons' transactions with the distributors, *see Brown*, 890 P.2d at 621 (stating that an agency relationship cannot exist unless the alleged principal "has the right to control the transaction"), but rather that S & L Vitamins and the tanning salons entered into arms-length transactions, with each entity acting out of its own self-interest. A reasonable jury could not conclude otherwise. Therefore, Designer Skin's agency theory fails as a matter of law.

It bears noting that Designer Skin did not even discuss these agency principles in its motion. Instead, it attempted to analogize this case to two cases from other jurisdictions: *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228 (10th Cir. 2006) (applying Oklahoma law), and *S & L Vitamins, Inc. v. Australian Gold, Inc.*, 521 F. Supp. 2d 188 (E.D.N.Y. 2007) (applying New York law). Both of these cases, however, are easily distinguishable. First, *Hatfield* did not involve an agency situation. There, the defendants obtained the products at issue directly from the distributors. 436 F.3d at 1235. And second, although *S & L Vitamins* involved an agency situation, the court in that case did not apply agency law. Instead, it simply stated in conclusory fashion that whether a defendant "is twice removed from the contractual relationship between [the plaintiff] and third parties is irrelevant" for purposes of the tort of intentional interference with contractual relations. 521 F. Supp. 2d at 217.

1 While this may be the law in New York, Designer Skin has not cited any Arizona authority
2 that would support this proposition.

3 In sum, on the record before this Court, a reasonable jury could not conclude that S
4 & L Vitamins has induced or caused Designer Skin's distributors to breach the distribution
5 agreement. Because Designer Skin has failed to make a showing sufficient to establish an
6 essential element of its prima-facie case, the Court will grant S & L Vitamins' motion for
7 summary judgment as to the claim of intentional interference with contractual relations and
8 the corresponding counterclaim for declaratory judgment of noninterference with contract.

9 *F. Unfair Competition*

10 1. Designer Skin' Claim

11 Designer Skin's claim for unfair competition is based on the alleged infringements of
12 its intellectual property rights. S & L Vitamins therefore argued that it would be entitled to
13 summary judgment on this claim if the Court granted it summary judgment on all of the
14 infringement claims in this suit. Because the copyright-infringement claim is proceeding to
15 trial, the Court will deny S & L Vitamins' motion for summary judgment as to Designer
16 Skin's unfair competition claim.

17 2. S & L Vitamins' Counterclaim

18 Designer Skin moves for summary judgment on S & L Vitamins' counterclaim for
19 unfair competition. In its response, S & L Vitamins failed to respond to this portion of
20 Designer Skin's motion. Considering that S & L Vitamins responded to all other portions
21 of Designer Skin's motion, the Court construes this failure to respond as an abandonment of
22 this counterclaim. The Court therefore will grant summary judgment to Designer Skin on
23 S & L Vitamins' counterclaim for unfair competition.

24 **IV.  Conclusion**

25 Pursuant to the foregoing,

26 **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 51) is
27 **granted in part and denied in part**, and Plaintiffs' Motion for Partial Summary Judgment
28 (Doc. # 52) is **granted in part and denied in part**, as follows:

(1) The Court grants summary judgment to S & L Vitamins on all of Designer Skin's claims in this case except the claims for copyright infringement and unfair competition;

(2) The Court grants summary judgment to S & L Vitamins on its counterclaims for declaratory judgment of noninfringement of trademark and noninterference with contract;

(3) The Court grants summary judgment to Designer Skin on S & L Vitamins' counterclaim for unfair competition.

To be clear, only two claims will proceed to trial: (1) Designer Skin's claim for copyright infringement and (2) Designer Skin's claim for unfair competition.

DATED this 19th day of May, 2008.

James A. Teilborg
United States District Judge